UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUINTIN J BALLENTINE,

Plaintiff,

-against-

CREDIT ONE BANK,

Defendant.

26-CV-4194 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action alleging that Defendant Credit One Bank violated his rights under the Fair Credit Reporting Act ("FCRA") and the Truth in Lending Act ("TILA"). By order dated August 10, 2026, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. The Court dismisses the complaint for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se*

pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff brings this action against Defendant Credit One Bank, asserting claims under TILA and FCRA. Plaintiff asserts that Defendant "through fraud, misuse of the contractual agreement, and fees levied not originally agreed upon" has "mischaracterized" a debt that Plaintiff "allegedly owed," but which he "paid in full over three years ago." (ECF 1, at 5.) Plaintiff alleges that, "in spite of this," Defendant "reopened [Plaintiff's] card without [his] permission, and began to charge exorbitant, and unreasonable fees, that tripled the original credit limit of 300 dollars, to [Plaintiff] owning almost 1000.00." (*Id.*)

Plaintiff further alleges that Defendants "engaged in a pattern of disruptive reporting on [his] credit report" that has caused his credit score to go down, and, as a result, caused him to "lose opportunities for employment, as well as housing." (*Id.*)

Plaintiff seeks damages arising from the "inaccurate credit reporting" on his credit report and an order directing "[r]emoval of fraudulent reported debt owed from all credit reports." (*Id.* at 6.)

## DISCUSSION

### A. Fair Credit Reporting Act

Plaintiff's FCRA claims appear to arise from Defendant providing allegedly inaccurate information to consumer reporting agencies, which caused a reduction in Plaintiff's credit score. Congress enacted the FCRA to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The FCRA places obligations on three types of entities involved in consumer credit: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *See Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002) (citing 15 U.S.C. § 1681, et seq.). As explained below, furnishers of information, such as Defendant, have obligations under the FCRA regarding reporting of information and investigation of alleged inaccuracies.

#### 1. Reporting inaccurate information

The FCRA prohibits furnishing information "to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). Violations of this provision, however, are enforced by certain government officials—not consumers themselves. *See* 15 U.S.C. § 1681s–2(d) (stating that Section 1681s-2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title"); *Longman v. Wachovia Bank, N.A.*, 702 F.3d

148, 151 (2d Cir. 2012) ("[T]here is no private cause of action for violations of § 1681s–2(a)."); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 79 (W.D.N.Y. 2018) (explaining that "[t]here is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials").

To the extent Plaintiff is asserting that Defendant provided inaccurate information to a consumer reporting agency in violation of Section 1681s-2(a), he cannot state a claim because individuals do not have a private right of action to sue for violations of this provision. The Court therefore dismisses any such claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**2. Duty to investigate**

Individuals can sue for violations of Section 1681s-2(b) of the FCRA, which "governs the furnishers' duty once notice is received *from a credit reporting agency* that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency." *Comunale*, 328 F. Supp. 3d at 77-78 (internal quotation marks and citation omitted); *id.* at 80 (stating that the FCRA "does provide for a private cause of action pursuant to § 1681s-2(b)").

Under Section 1681s–2(b), a furnisher of information must, among other things, "conduct an investigation with respect to the disputed information," after receiving notice of a potential inaccuracy from a consumer reporting agency ("CRA"). 15 U.S.C. § 1681s–2(b)(1). "To state a claim [under Section 1681s–2(b)(1)], a consumer must show that (1) a furnisher received notice of a credit dispute from a CRA (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148 (FPG), 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019).

In determining whether a furnisher of information has satisfied its obligations arising under Section 1681s-2(b), "courts have required a 'reasonable investigation.'" *Amendoeira v.*

*Monogram Credit Card Bank of Ga.*, No. 05-CV-4588, 2007 WL 2325080, at *1 (E.D.N.Y. Aug. 7, 2007). The reasonableness of a furnisher's investigation depends upon the nature and scope of the consumer's dispute. *See Okocha v. HSBC Bank USA, N.A.*, No. 08-CV-8650 (MHP), 2010 WL 5122614, at *6 (S.D.N.Y. Dec. 14, 2010) (examining the reasonableness of a furnisher of information's investigation based upon "what it was told by the credit bureau").

Here, Plaintiff alleges that Defendant provided unspecified CRAs with information which he alleges is inaccurate. Plaintiff does not allege that he disputed the information with a CRA, that the CRA notified Defendant of the dispute, or that Defendant failed to conduct a reasonable investigation after learning of the dispute from the CRA. The Court therefore dismisses Plaintiff's claims under this provision of the FCRA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Truth in Lending Act and Fair Credit Billing Act**

Plaintiff invokes TILA and appears to assert claims that Defendant engaged in unfair credit practices. Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare the credit terms available and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a). The Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666-1666j, amended TILA to "protect the consumer against inaccurate and unfair credit billing and credit card practices," 15 U.S.C. § 1601(a). Because Plaintiff's allegations appear to implicate the FCBA, the Court will consider whether Plaintiff states a claim under that statute.

The FCBA applies to "open-end credit," such as a credit card or a revolving charge account that is "primarily for personal, family, household, or agricultural purposes," 12 C.F.R. § 226.2(a)(20), and it imposes on creditors "requirements . . . for the correction of billing errors," *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981). A consumer invoking the FCBA must have notified the creditor of billing errors within 60 days of the creditor's transmission of the

statement containing the alleged error. 15 U.S.C. § 1666(a).[1] A creditor receiving such an inquiry must send a written acknowledgement within 30 days, 15 U.S.C. § 1666(a)(A), and has two billing cycles (or a maximum of 90 days after notification), to resolve the dispute, 15 U.S.C. § 1666(a)(B).

Here, Plaintiff alleges that Defendant "mischaracterized" a debt he owed, reopened his account and charged "exorbitant" fees. (ECF 1, at 5.) Even if the Court assumes that Plaintiff's account with Defendant falls within the type of credit covered by the FCBA, Plaintiff does not allege nonconclusory facts about the nature of any billing errors, or any facts showing that he notified Defendant of any alleged billing error. The Court therefore dismisses Plaintiff's claims under TILA and FCBA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. State law claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting.[2] *See Kolari v. New*

---

[1] To notify the creditor, the consumer must: (1) set out details of his name and account; (2) indicate his belief that the statement contains a billing error and the amount; and (3) set out his reasons for believing that there has been a billing error. 15 U.S.C. § 1666(a).

[2] Plaintiff does not invoke the court's diversity of citizenship jurisdiction, and his allegations do not demonstrate that the court has diversity jurisdiction of any state law claims. To establish diversity of citizenship, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). "[A] national bank is a citizen only of the state listed in its articles of association as its main office."

*York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D. Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The exact degree of solicitude that should be afforded to a *pro se* litigant in any given case depends upon a variety of factors, including the procedural context and relevant characteristics of the particular litigant. *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010); Specifically, a *pro se* litigant who has previously brought a similar case may be charged with knowledge of particular legal requirements. *See Sledge v. Kooi*, 564 F.3d 105, 109-110 (2d Cir. 2009). Courts may decline to grant leave to amend where a plaintiff repeatedly brings claims that have previously been dismissed. *See Dwyer v. United Kingdom Gen. Commc'ns Headquarters*, No. 22-3012, 2024 WL 259693, at *1 n.1 (2d Cir. Jan. 24, 2024) ("While our cases generally discourage . . . dismissing an action *sua sponte* without notice and opportunity to respond, *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018), we have recognized exceptions for 'unmistakably'

---

*OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

Here, Plaintiff alleges that he is a citizen of the State of New York and that Defendant is incorporated and maintains its headquarters in the State of Nevada, but he does not allege the state listed in Defendant's articles of incorporation as its main office. Even if Plaintiff could establish diversity of citizenship, the Court would still lack diversity jurisdiction because Plaintiff seeks only $4,000, far below the $75,000 jurisdictional threshold.

defective pleadings, *id.*, and serial litigation that 'reassert[s]' claims previously dismissed, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000).")

Plaintiff has previously filed another action against Defendant in this court in which he asserted similar claims under TILA/FCDA and FCRA. *See Ballentine v. Credit One Bank, N.A.*, No. 24-CV-4710 (S.D.N.Y. Jan. 23, 2025). Chief Judge Laura Taylor Swain dismissed that action for substantially the same reasons as the Court dismisses this action.[3] The Court therefore finds that Plaintiff should have been aware when he filed this action of the pleading requirements for such claims and that his complaint lacked merit under those standards. Because Plaintiff has brought, and the court has dismissed, nearly identical claims brought by Plaintiff against Defendant, the Court declines to grant Plaintiff leave to amend his complaint.

**CONCLUSION**

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to enter judgment dismissing this action.

SO ORDERED.

Dated: August 12, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.

[3] In a November 21, 2026 order, Chief Judge Swain directed Plaintiff, within 60 days, to file an amended complaint curing the deficiencies identified in that order. ECF 1:24-CV-4710, 6. Plaintiff failed to file an amended complaint, and Chief Judge Swain dismissed the action for the reasons stated in her November 21, 2024 order. ECF 1:24-CV-4710, 7.